# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE PRECIA JONES, | |
| Plaintiff, | |
| v. | CIVIL ACTION |
| | NO. 12-6582 |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY *et al.* | |
| Defendants. | |

## MEMORANDUM

YOHN, J.                                                                                                           May 9, 2013

Plaintiff, Michelle Precia Jones, brings this employment discrimination action against defendants, the Southeastern Pennsylvania Transportation Authority ("SEPTA") and Alfred Outlaw, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.* ("PHRA"); 42 U.S.C. § 1983; and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). She also asserts a claim of common law wrongful termination. Before me is defendants' motion to dismiss counts two, three, four, and six of Jones's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will grant defendants' motion in part and deny it in part.

## I.     Factual and Procedural Background

The relevant facts are as follows. Jones, a female, began her employment with SEPTA in May 1988 as a secretary in SEPTA's planning and construction department. (Am. Compl. ¶ 9.) After a brief hiatus in 2000, she returned to work at SEPTA in 2001 as an administrative

assistant in its revenue operations department. (*Id.* ¶ 10.) Outlaw, as director of revenue operations, was her supervisor. (*Id.*) Jones alleges that Outlaw subjected her to continual harassment beginning in 2001 and lasting until August 2010. (*Id.* ¶ 11.) She claims that he would constantly ask her about her deceased husband, despite "knowing it was still an emotional subject for Plaintiff." (*Id.* ¶ 13.) He made "numerous unwelcome sexual comments" to her and "asked Plaintiff to do for him what Plaintiff felt were sexual in nature [sic]." (*Id.* ¶ 23.) In July 2010, while Jones was looking at vacation pictures at her desk, Outlaw stopped to look. He made a comment "about Plaintiff's breast [sic]," stating that he was unaware that Jones was so "well endowed." (*Id.* ¶ 24.) Between 2001 and August 2010, whenever Jones would walk out of Outlaw's office, he would say "hmm, hmm, hmm..."; plaintiff asserts that this was a reference to her buttocks. (*Id.* ¶ 25.) Jones alleges that she "opposed Outlaw's sexual comments" by informing him that such comments were inappropriate and that he should stop. (*Id.* ¶¶ 24-25.)

Jones states that Outlaw would stand in front of her desk and look down her blouse, "starring [sic] at her breast [sic] and making faces." (*Id.* ¶ 26.) During a staff meeting in the summer of 2010, Outlaw stated that he wanted the females to wear skirts to work in order to show off their legs. (*Id.* ¶ 28.) In July 2010, "Outlaw asked Plaintiff to come into his office, told her that he saw on the Jefferson's show [sic], a scene where Florence was walking on George's back, and asked Plaintiff to . . . walk on his back." (*Id.* ¶ 29.)

Outlaw regularly assigned Jones work related to his personal business; this gradually became the majority of work he assigned to her. (*Id.* ¶¶ 31-32.) In the fall of 2009, Outlaw asked Jones to cut and paste another employee's signature on a performance evaluation because that employee was not available to sign it. Jones refused to do so. (*Id.* ¶ 33.)

Plaintiff alleges that she was not the only female targeted for harassment. Of the five other employees reporting to Outlaw, one was female—Victoria Watts Trontman—and four were male. Plaintiff asserts that Outlaw "consistently treated his male direct reports more favorable than the female [sic]." (*Id.* ¶¶ 14-15.) Outlaw would give the males "comp time" in contravention of SEPTA's compensation policy. (*Id.* ¶¶ 16-20.) On one occasion in August 2007, Outlaw allegedly harassed Trontman about pumping breast milk in a private room; in April 2006, he called Trontman at home and asked if she was breast feeding. (*Id.* ¶ 27.)

In August 2010, Jones took FMLA leave due to a sciatic nerve injury. She returned to work on November 17, 2010. (*Id.* ¶ 35.) On December 1, 2010, Outlaw called Jones into his office and accused her of forging his signature on time sheets. Jones denied the charge, but Outlaw suspended her from work that same day. (*Id.* ¶ 37.) On December 2, Jones called SEPTA's EEO/AA Department to complain about the sexual harassment she had faced. She also asserted that the suspension was retaliation for her refusing to do work for Outlaw's personal business and for her opposing his sexual comments. (*Id.* ¶ 38.) She submitted her discrimination and retaliation complaint on December 7, 2010; she has not since heard from SEPTA about the status of her complaint. (*Id.* ¶ 40-43.) SEPTA discharged her on February 22, 2011. (*Id.* ¶ 44.)

Jones initiated this lawsuit on November 23, 2012, and filed an amended complaint on April 1, 2013. Defendants move to dismiss counts two, three, four and six of the amended complaint under Rule 12(b)(6). These counts comprise Jones's "Title Violations [sic]" claim against SEPTA (presumably, her Title VII retaliation claim); her PHRA discrimination and retaliation claims against SEPTA and Outlaw; and her common law wrongful termination claim

against SEPTA.[1]

## II. Discussion

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.*

Thus, the Third Circuit has developed a three-step approach. "First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation marks and

---

[1] The extensive quotes from the amended complaint show that plaintiff's counsel might benefit from having his submissions proofread more thoroughly.

4

citations omitted).

B.   **Application**

Defendants argue that (1) the retaliation claims under Title VII and the PHRA (Counts 2 and 4) must be dismissed because Jones has not adequately alleged a causal connection between her engaging in protected activity and the adverse employment action (her suspension and discharge); (2) the PHRA discrimination claim (Count 3) are time-barred; (3) Jones has not alleged sufficient facts to support Outlaw's individual aider-and-abettor liability under the PHRA (Counts 3 and 4); and (4) Jones cannot pursue a common law wrongful termination claim because she is not an at will employee (Count 6). I address these arguments in turn.[2]

1.   **Title VII and PHRA Retaliation Claims**

To state a claim of retaliation under Title VII or the PHRA, a plaintiff must allege that she engaged in activity protected by the relevant statute; the employer took an adverse employment action against her; and there was a causal connection between her participation in the protected activity and the adverse employment action. *See Wadhwa v. Sec'y, Dep't of Veterans Affairs*, No. 12-2723, 2012 WL 5974233, at *2 (3d Cir. Nov. 30, 2012) (Title VII); *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 n. 5 (3d Cir. 2006) (PHRA). Defendants argue that,

---

[2] I decline to consider the "Notice of Charges/Reasons for Imminent Discharge" that defendants have attached to their motion to dismiss. (Mot. to Dismiss Ex. B.) I do not believe that it was integral to the complaint such that I can consider its contents without converting the instant motion to one for summary judgment. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Defendants have not asked for summary judgment as an alternative to dismissal. While the letter is powerful evidence that Jones was fired for forging time sheets and stealing from SEPTA, and not for reasons prohibited by Title VII and the PHRA, the letter does not change my analysis of whether Jones has at least adequately *pleaded* her discrimination and retaliation claims. Plaintiff herself, however, may want to question whether she desires to pursue litigation that will inevitably bring these allegations into public view.

as a matter of law, the adverse action must occur *after* plaintiff's participation in the protected activity. They cite a number of cases in support, but all the cited cases involved summary judgment. *See Warfield v. Se. Penn. Transp. Auth.*, 460 F. App'x 127, 131-32 (3d Cir. 2012); *Jordan v. Se. Penn. Transp. Auth.*, No. 10-3470, 2012 WL 4815414, at *14 (E.D. Pa. Oct. 10, 2012); *Mihalko v. Potter*, No. 00-2076, 2003 WL 23319594, at *14 (W.D. Pa. Dec. 12, 2003), *report and recommendation adopted*, Jan. 6, 2004; *Rand v. Mannesmann Rexroth Corp.*, No., 2002 WL 550396, at *8 (E.D. Pa. Apr. 15, 2002); *Osuala v. Cmty. Coll. of Phila.*, No. 00-98, 2000 WL 1146623, at *9 (E.D. Pa. Aug. 15, 2000). Nevertheless, defendants' argument makes sense as a logical matter: if the adverse action truly and fully precedes the protected activity, a plaintiff's claim that the protected conduct caused the adverse action loses all "facial plausibility."

But defendants' argument does not apply to the allegations in this case. Defendants overlook that Jones has alleged that she engaged in protected activity prior to her December 1, 2010 suspension and her eventual discharge. Jones states that she repeatedly told Outlaw that his behavior was inappropriate in the time period between 2001 and August 2010. (Am. Compl. ¶¶ 24-25.) Protected activity encompasses "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Plaintiff points to a recent case from the Fourth Circuit indicating that even complaints to the discriminating supervisor (here, Outlaw) can constitute protected activity. *See Harris v. Home*

6

*Sales Co.*, 499 F. App'x 285, 293 (4th Cir. 2012) (where plaintiff "claim[ed] that he protested . . . [supervisor's] racist remark when speaking with [supervisor] on the phone" he had "shown that he engaged in protected activity").

Because Jones has alleged that she engaged in protected activity before the alleged adverse action, defendants' argument for dismissal fails.

### 2. Timeliness of PHRA Discrimination Claim

Litigants are required to exhaust their PHRA claims before the Pennsylvania Human Relations Commission ("PHRC") before coming to court. *See Kelly v. United States Steel Corp.*, No. 11-193, 2011 WL 3607458, at *2 (W.D. Pa. Aug. 16, 2011) (citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 920 (Pa. 1988)). One must file a charge of discrimination with the PHRC within 180 days of the alleged discriminatory act. *Id.* (citing 43 Pa. Stat. Ann. § 962(h)). Jones filed her charge with the PHRC on March 22, 2011. (Defs.' Mot. Dismiss Ex. C.) Therefore, she must point to some discriminatory act that occurred less than 180 days prior—that is, some act that occurred after September 23, 2010.

Defendants argue that because the amended complaint only alleges instances of discrimination between 2001 and August 2010, the PHRA discrimination claim (count three) must be dismissed. Jones counters that she has alleged discriminatory acts within the applicable time period. She points to Outlaw's "false accusations" on December 1, 2010, and her suspension that same day, as examples of gender discrimination. (Pl.'s Mem. Law Opp'n Mot. Dismiss 16.) She adds her February 22, 2011 termination as another instance. (*Id.* 17.) Jones explains that, in taking these actions, SEPTA and Outlaw were treating her more harshly than they treated male employees. (*See id.* 16; Am. Compl. ¶ 55.)

7

I note that there is no bar to using the same alleged acts to support a discrimination and retaliation claim, as Jones does here. *Cf. Finizie v. Peake*, 548 F. Supp. 2d 171, 179-80 (E.D. Pa. 2008) ("With regard to the job posting in 2002 . . . [i]t is clear that [plaintiff] can make out a *prima facie* case of both retaliation and gender discrimination."). Construing the complaint in the light most favorable to plaintiff, I find that she has alleged discriminatory acts within the relevant time frame. Therefore, defendants' motion to dismiss count three will be denied.[3]

### 3. Individual Liability under the PHRA

Defendants concede that the PHRA allows for individual liability where "a supervisory employee aided and abetted unlawful discriminatory practices of the employer." (Br. Supp. Mtn. Dismiss 9 (citing 43 Pa. Cons. Stat. § 955(e)). They argue, however, that the amended complaint is devoid of facts to support Jones's assertion of individual liability: while the complaint alleges that Outlaw sexually harassed plaintiff, it does not "detail any actions . . . to *aid or abet* any alleged unlawful discriminatory practices of *SEPTA*." (*See id.* (emphases added).)

The argument that a supervisor does not aid or abet an employer's discrimination through his *own* discriminatory acts has been squarely rejected. *Glickstein v. Neshaminy School District*, No. 96–6236, 1997 WL 660636, *11–13 (E.D. Pa. Oct. 22, 1997), held that supervisors can be held liable under section 955(e) for their own direct acts of discrimination. "[U]nder agency principles, a supervisory employee who engages in discriminatory conduct while acting in the scope of his employment shares the intent and purpose of the employer and may be held liable

---

[3] Defendants have not addressed whether Jones is precluded from relying on any purported violations that occurred before September 22, 2010, as *part* of her discrimination claim; thus, I only address their argument that the entire PHRA discrimination claim must be dismissed.

for aiding and abetting the employer in its unlawful conduct." *Id.* at 12.

Defendants' reliance on *Cohen v. Temple Physicians, Inc.*, 11 F. Supp. 2d 733 (E.D. Pa. 1998), is misplaced. It appears that the plaintiff in *Cohen* failed to allege that the individual supervisors actually committed any "direct acts of discrimination." *See id.* at 737. Here, Outlaw (according to the amended complaint) has sexually harassed plaintiff. Per *Glickstein*, Outlaw may be held individually liable under the PHRA.

4. **Common Law Wrongful Termination**

In *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974), the Pennsylvania Supreme Court implied that "an employee at will can maintain a wrongful discharge action where a clear mandate of public policy has been violated by the termination." *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 37 (Pa. Super. Ct. 1986). But case law makes clear that this public-policy-based wrongful termination claim extends *only* to at-will employees. *See Ross v. Montour R. Co.*, 516 A.2d 29, 32 (Pa. Super. Ct. 1986) ("[T]he tort of wrongful discharge is available only when the employment relationship is at-will." (quoting *Phillips*, 503 A.2d at 38)); *Engstrom v. John Nuveen & Co., Inc.*, 668 F.Supp. 953, 959 (E.D. Pa. 1987) ("Pennsylvania recognizes a cause of action for wrongful discharge only when the employment is at-will because terminated employees who are not at-will employees may pursue their claims under breach of contract theories."). In *Marchionni v. Southeastern Pennsylvania Transportation Authority*, the court pointed out that SEPTA employees are "just cause" employees under SEPTA's enabling statute; therefore, they cannot sue for the tort of wrongful discharge.[4] *Marchionni v. Se. Penn. Transp.*

---

[4] Plaintiff argues that "SEPTA relies on decisions where the Court dismissed common law wrongful actions [sic] by SEPTA's union employees that are subject to a Collective Bargaining Agreement that expressly states that such common law claims can only be asserted

*Auth.*, No. 98-6491, 2000 WL 124564, at *2-3 (E.D. Pa. Feb. 2, 2000) (citing 74 Pa. Cons. Stat. § 1724(a)(3)). Thus, count six of the amended complaint will be dismissed.

**IV.     Conclusion**

For the reasons set forth above, I will grant defendants' motion with respect to the wrongful termination claim. Because I find that amendment would be futile—Jones, by law, is a "just cause" employee—I will dismiss the claim with prejudice. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.") The balance of defendants' motion is denied. An appropriate order follows.

---

through a binding arbitration between SEPTA and the Union." (Pl.'s Mem. Law Opp'n Mot. Dismiss 19.) The court's decision in *Marchionni* did not turn on the existence of a collective bargaining agreement. In fact, the opinion never once mentions such an agreement. Thus, when plaintiff's counsel asserts that "SEPTA has not cited any authority that holds that Plaintiff cannot assert a civil action under common law wrongful termination claim [sic] that she was terminated by SEPTA without just cause," (*Id.*), he is simply mistaken.